COFER, Justice, for the Court:
Mississippi Power Company (MPCo), is a public utility serving an extensive area in southeast Mississippi. An excellent general view of it may be had by examination of the Court’s opinion in Mississippi Power Company v. Mississippi Public Service Commission, 291 So.2d 541 (Miss.1974).[1]
The present appeal to this Court is from a decree of the Chancery Court of the First Judicial District of Hinds County reversing appellant’s order on appellee’s application for an increase in the rates charged its consumers.
On the 7th day of November, 1975, appel-lee filed with appellant (Commission) its notice of intention to put into effect on December 7, 1975, new schedules of rates with supporting data as required in Mississippi Code Annotated, section 77-3-37 (1972). There followed the procedure of suspension of the proposed rate charges and application of the rates notwithstanding the suspension by MPCo’s posting a refunding bond, in accordance with section 77-3-39, and the Commission controverted the proposal to charge the changed schedule of rates, and, after a lengthy hearing amassing twelve volumes of record, the Commission entered order as required by Section 77-3-59.
By its new schedules of rates, MPCo sought an increase of $14,380,000, of which the Commission approved an increase of $5,986,000, 41.627% of that sought. Appeal therefrom to the chancery court resulted in a reversal of the Commission’s order and remand to the Commission. The chancellor concluded that, in its findings and order, the Commission did not give due consideration to the necessity of coverages required by the Securities and Exchange Commission for MPCo’s long term debt and preferred stock; the increased cost of operations, supplies, materials, and labor; the high embedded cost of debt and preferred stock; the necessity for increased dividends; requirements and cost of shifting to alternate fuel facilities and the necessity for plant expansion to meet the growing needs of the rapidly developing certificated area.
The chancellor concluded that the Commission’s order is contrary to the overwhelming weight of the evidence, is unsupported by substantial evidence, and is confiscatory in its effect on MPCo.
He affirmed the Commission’s order denying a change of approach to fuel adjustment sought by MPCo, and otherwise reversed and remanded the case to the Commission for further appropriate action.
The Commission has brought the case to this Court on the reversal (MPCo perfected a cross appeal on the fuel adjustment issue, but has abandoned it, and the cause is before us only on direct appeal.)
Errors assigned, eight in number, may be condensed to these issues: The chancellor erred (1) in acting beyond his scope of authority in reviewing the Commission’s order, (2) in finding that the testimony of Dr. Bicksler (the Commission staff’s expert) was improperly considered by the Commission, (3) in finding the Commission gave no consideration to MPCo’s coverages required for mortgage loans and for preferred stock *659 sales, (4) in finding MPCo had met its burden of showing reasonableness of its proposed rates increases, and (5) in finding the Commission’s order to be (a) contrary to the overwhelming weight of the evidence, (b) confiscatory and not supported by substantial evidence, and (c) unreasonable in the increase allowed.
In the first of these condensed assignments, the Commission contends that the chancellor exceeded his authority by determining the rates for MPCo customers to pay.
Mississippi Code Annotated, section 77-3-67 (1972), (subsequently amended in a part not pertinent to this decision), says as to judicial review of commission orders:
The order shall not be vacated or set aside either in whole or in part, except for errors of law, unless the court finds that the order of the commission is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the commission or violates constitutional rights.
As enunciated in MPCo, 1976, supra, and decisions therein cited, rate making is a legislative matter, and, in such cases as here, authority to prescribe rates belongs to the Commission. (337 So.2d at 940).
 Judicial review, which does not include preemption of the authority of the Commission to legislate the rates, is provided by the statute cited above. We do not read into the chancellor’s decision, whether ultimately affirmed herein or not, any undertaking to substitute himself in place of the Commission, but find that he confined himself to the duty and authority specifically reserved to him. This assignment lacks merit, in our opinion.
In addition to MPCo officials well versed in its finances and financial needs, MPCo had the testimony of Dr. Langum. The one witness of the Commission was Dr. Bicksler. Both these financial economists, by their testimony and credentials, appear to be giants in the field of large finance economics.
Dr. Langum testified as to the increased finances needed by MPCo from the comparative earnings approach, laid down in Bluefield Waterworks and Improvement Co. v. Public Service Comm. of West Virginia, 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176 (1923), and Federal Power Comm. v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1943), and followed recently in Mississippi Power Co. v. Mississippi Public Service Comm., 1974, supra.
Dr. Langum used in his rate base original cost without “flow through” which he explained as meaning normalizing tax deferrals from accelerated depreciation and amortizing the investment tax credit to income over the service life of the property.
Dr. Bicksler was retained by the Commission staff for what to us appears to be a restricted assignment, set out in this testimony on cross examination:
Q. You state, quote “the absolute upper limit to the fair rate of return for Mississippi Power Company is 8.44 percent.”, do you not?
A. Yes.
Q. To what rate base do you apply that rate of return in order to determine the number of dollars of revenue for Mississippi Power Company?
A. That question is outside the bounds of my testimony. My testimony is narrowly confined to two issues: one, estimating a fair rate of return; two, a few brief comments on rate structure. Furthermore, I have not given that question sufficient rigorous thought to come up with or present a meaningful answer.
Q. Then you have no idea as to the number of dollars of revenue you are recommending for Mississippi Power Company, do you?
A. As I indicated, I have not given that question sufficient rigorous thought to come up or present a meaningful answer. ...
(Emphasis added).
The expert evidenced very little awareness of finances of MPCo, and found it not needful or an important element in his tes *660 timony, holding out as very nearly perfect, best in the field of financial economics, his capital asset pricing model (CAPM). What to him, would be a proper rate structure for MPCo apparently would not be influenced by amount of debt, preferred stock, and common equity although Mississippi Code Annotated, Section 77-3-43 (1972), requires the Commission to fix a rate base in the regulation of rates. Hence, the Commission was without his expertise in this area. In fixing ratios of return, Bicksler employed the percentages of rate base attributed to debt, preferred stock, and common equity arrived at by MPCo expert Langum.
Dr. Bicksler used printouts from the Center for Research for Security Prices, based in Chicago. These are referred to as “CRISPE tapes” and received treatment by us in Mississippi Valley Gas, 1978, supra. Dr. Bicksler testified in that case, using CRISPE tapes. There, the company had moved for an order to direct Dr. Bicksler to “furnish the written material, documents, letters and data fed to the computer, and the questions asked and tasks assigned, to the computer, for the purpose of cross-examining Dr. Bicksler about the CRISPE tapes.” Later renewed, the motion was denied by the Commission. This Court there said as the chancellor had said, “Dr. Bicksler might have reached the right result, but in the present state of the record there is no way to tell.” Since Dr. Bick-sler’s testimony was largely based upon the unauthenticated tapes about which he testified, but did not produce, the chancellor here correctly held that the Commission could not properly rely upon his testimony in this important matter, even though he gave other testimony unrelated to the tapes.[2]
After prepared direct testimony, direct testimony, on the stand, and cross examination, this exchange took place on redirect examination of Dr. Bicksler:
Q. Dr. Bicksler, would you explain just exactly what the CRISPE tapes are and what its recognition is in the field of modern economics.
A. Yes, the CRISPE tapes are maintained by the Center for Research in ' Security Prices at the University of Chicago. It’s a data file comprised of dividends and capital gains, that is, the returns of, on equity of a firm, and it goes back to 1925 and it’s the most extensive data file with reference to returns on equity available and because of this, it’s the most comprehensive and reliable source of security prices data utilized for deriving and testing capital market risk and return relationships.
Q. And it is so recognized in the field of economics?
A. Very definitely, most of the modern financial works that test or even purport to test the behavior of expected return and risk in the real world utilizes that information.
The Commission asserts as error that the chancellor found that it gave no consideration to coverages required for loans and preferred stock sales.
Mississippi Code Annotated, Section 77-3-59 (1972), requires, in pertinent part, as follows:
After the conclusion of a hearing, the commission shall make and file its findings and order, and its opinion, if any. All findings shall be supported by substantial evidence presented in the hearing and shall be in sufficient detail to enable the court on appeal to determine the controverted questions presented by the proceeding, and the basis of the commission’s conclusion.
A close examination of the Commission’s findings and order will reveal no treatment therein of coverages, as such, but only as coverages are included in its decision that the rate allowed was sufficient to assure confidence in the integrity of MPCo’s finances, so as to maintain its credit and to *661 attract capital. The chancellor was not in error here.
The assignments that the lower court erred in finding that MPCo had met its burden of proving reasonableness of its proposed rate increases and that the Commission’s order was contrary to the overwhelming weight of the evidence, confiscatory, not supported by substantial evidence, and unreasonable in the increase allowed are likewise not well taken.
It is true that the commission’s order carries with it the presumption of validity, MPCo, 1976, supra, and is prima facie correct, Miss. Valley Gas, 1976, supra, but as held in the case just cited, the burden has shifted to the commission to point to the evidence that supported its order to show that its order was not manifestly contrary to the weight of the evidence. We fail to find that the commission has succeeded in showing that the finding and decision are not against the manifest weight of the evidence.
We are of the opinion that the lower court’s decree was correct and affirm it, and remand the cause to the Commission to be reopened there for such further hearing as may be desired by the parties and necessary to accurate order based on factual findings upon substantial evidence, the findings to comply with Section 77-3-59. MPCo, 1974, supra.
In thus remanding the cause, MPCo will have access to discovery in legal manner and the Commission will be enabled to establish, if it may be done, the accuracy, dependability, and admissibility of the CRISPE tapes and of testimony derived therefrom.
The Commission omitted from the rate base it established, if otherwise correct, customer deposits which have been held by us to be a part of the debt of a public service corporation. Miss. Valley Gas 1976, supra. These should be included in the rate •base anticipated on this remand.
It likewise reduced working capital of $20,887,000, used in its rate base to $10,-657,000, with only the finding that MPCo’s claim is excessive because the cash requirement for a 45-day period is $19,149,000. For an amount used as working capital in the Commission’s rate base, there should be shown basis in the record to which the Commission should point in its findings.
We further observe that the Commission failed to use the absolute upper figure fixed by Dr. Bicksler as rate, but took a lower figure. As trier of the facts, we are of the opinion that discretion rests in the Commission, and that it may, if supported by substantial evidence and explained in its finding, arrive at a figure not fixed by any expert in the case. We do not interpret our views in MPCo, 1974, supra, as being contrary to our views here expressed.
AFFIRMED AND REMANDED TO THE COMMISSION.
PATTERSON, C. J., SMITH, ROBERTSON, P. JJ., and SUGG, WALKER, BROOM and LEE, JJ., concur.
BOWLING, J., takes no part.

. (a) Two cases between Miss. Power Co. and Miss. Public Service Comm. are cited herein. Miss. Power Co. v. Miss. Public Service Comm., 291 So.2d 541 (Miss.1974), and Miss. Public Service Comm. v. Miss. Power Co., 337 So.2d 936 (Miss.1976). These for brevity will be hereinafter cited as MPCo 1974 and MPCo 1976, respectively.
(b) Two cases between Miss. Valley Gas Co. and Miss. Public Service Comm, are cited herein. Miss. Public Service Comm. v. Miss. Valley Gas Co., 327 So.2d 296 (Miss.1976), and Miss. Public Service Comm. v. Miss. Valley Gas Co., 358 So.2d 418 (Miss. 1978). These for brevity will be hereinafter cited as Miss. Valley Gas, 1976 and Miss. Valley Gas, 1978, respectively.

. This Court first dealt with computer printouts in King v. State, 222 So.2d 393, 398 (Miss.1969).