HERRING, Judge,
for the Court:
¶ 1. The Mississippi Public Service Commission (MPSC) ruled on June 9, 1994 that the Tishomingo County Water District, Inc. had improperly spent grant funds and discriminated against Albert Shadburn and others when it failed to provide Shadburn and his neighbors with water service during construction of an upgraded water system in Tishomingo County. MPSC ruled that the Water District should provide water service to Shadburn within one hundred twenty days of its order. The Water District appealed to the Chancery Court of Tishomingo County, Mississippi, which reversed and set aside the Public Service Commission’s order on December 12, 1995. Shadburn and MPSC now appeal to this Court. For the reasons set forth in this opinion, we affirm the decision of the chancery court.
A. THE FACTS
¶2. Tishomingo County Water District, Inc. was created by the Board of Supervisors of Tishomingo County on June 3, 1991, for the purpose of providing water service to area residents, all in compliance with the provisions of Sections 19-5-151 through 19-5-207, Mississippi Code of 1972. Prior to the formation of the Water District, a public hearing was duly noticed and held by the Supervisors to hear any protests from interested citizens in compliance with the statute. Reeeiving no protests, the Supervisors created the District and appointed its Board of Commissioners. According to the sketchy record before us, the Water District covered all of Tishomingo County outside its municipalities, but initially sought a more limited water service area from the MPSC. Neither the description of the boundaries of the Water District nor the certificate of public convenience and necessity or the description of the service area sought from the MPSC were included in the record for our inspection.[1]
¶ 3. All parties agree that the Tishomingo County Water District was created because of health problems identified in 1990 by the Mississippi Department of Health in the Eastport-Snowden area of Tishomingo County. These health problems resulted in a moratorium on new customers or water meters to be installed by the Eastport-Snowden Water Association, Inc, a non-profit corporation, because of low water pressure. The potential for water contamination is created when water system pressure is low, when the water in the system’s infrastructure is allowed to stand idle for a period of time, and when water in the system is not hydraulically subject to constant movement.
¶4. The Tishomingo County Water District was created by the County’s Board of Supervisors when its predecessor, the East-port-Snowden Water Association, acknowledged its inability to adequately serve its membership and relinquished its exclusive right to serve its members. Although the record is unclear, it is apparent that MPSC subsequently issued a new certificate of public convenience and necessity to the Tishom-ingo County Water District pursuant to Section 77-3-11 of the Mississippi Code, as amended, which empowered the District to provide exclusive water service to the inhabitants of the old Eastport-Snowden service area.[2]
*1229 ¶ 5. The sum of $800,000 was obtained from the Mississippi Economic Impact Authority by the new Water District to fund the upgrading of the old Eastport-Snowden water system. An additional $375,000 of “urgent needs” funding was also secured by the Water District from the Mississippi Department of Economic and Community Development. The plans for upgrading and improvements to the old water system were prepared by engineers working in conjunction with the State Health Department. It is noteworthy at this point that Shadburn’s property, as well as the property of other landowners on Indian Creek Road, were never provided with water service by the old Eastport-Snowden Water Association prior to its dissolution, and they had no prospect of ever being provided with water service until the old water system could be ungraded and the moratorium on service to new customers set aside by the State Health Department.
¶6. An additional $575,000 was borrowed by the new Water District from the Farmer’s Home Administration (FmHA), an executive agency of the United States, which was to be repaid over a period of thirty-five years. According to Shadburn, the FmHA funds were obtained in order to add additional customers to the water system. David Jourdan, the Chairman of the Board of Commissioners of the new Water District, agreed and stated that approximately seventy-five customers were added to the water system as a result of waterline extensions which were funded by FmHA loans. According to Jourdan, the addition of new customers and additional income to the District from new water users was desirable because it had the effect of lowering the water rates and the monthly obligation of existing water users to repay the FmHA loan.
¶ 7. As stated, the Water District, operating within FmHA and Mississippi Department of Health guidelines, added seventy-five new customers to the new water system. Fifty-two of these customers were located in a small portion of the state of Alabama which was cut off from the rest of that state when Pickwick Lake was constructed. According to the record, the only way to get to the rest of Alabama from that portion of Alabama cut off by Pickwick Lake was by air, boat, or by traveling out on the ground through Tishom-ingo County. According to the testimony, these customers also received electric power from Mississippi sources and many children from the area attended Mississippi schools.
¶8. According to Chairman Jourdan, the location of the new waterline extensions were chosen in order to reach large concentrations of potential customers and maximize the amount of additional income to the district received from water sales. Shadburn’s property on Indian Creek Road was not selected for new water line extensions because of its sparse population, although Shadburn’s property was located within the Water District’s certificated service area. Shadburn claims that the Water District improperly ignored customers within its own exclusive service area when it extended its water lines to Alabama residents. The District, on the other hand, claims that it only expended FmHA loan funds in accordance with strict federal guidelines which required that consideration be given to maximizing the number of new customers so that adequate funds eould be generated to repay the FmHA loan in a timely manner. Likewise, grant funds were expended and improvements were made to the old water system only in accord with Health Department directives so that its moratorium on new meter hook-ups eould be withdrawn.
B. COURSE OF PROCEEDINGS
¶ 9. Albert Shadburn filed a complaint with the MPSC on August 2, 1993 and alleged that the Water District had improperly committed the following acts:
A. Represented, prior to the formation of the present Tishomingo County Water District, that the Plaintiff and other landowners in present dry areas would be served with water and have failed to do so to date.
B. Have begun construction with grant monies to serve areas of the certificated area to the exclusion of the Plaintiff and other land owners.
C. Have begun construction to serve landowners of the State of Alabama in violation of the laws of this State.
*1230 D. Have discriminated against the Plaintiff and other residents by refusal and failure to serve them or to give any reason why they should not be served.
E. Have arbitrarily and capriciously selected certain landowners areas to be served to the exclusion of other landowners in the certificated area.
F. Have failed to properly spend funds equally to all residents of the certificated area.
G. Have devalued the property of the Plaintiff and other land owners in the area by failing to serve their property with adequate water.
The Appellant then requested that the MPSC grant the following relief:
A. That this Commission take whatever actions are necessary to investigate the allegations set forth in this Complaint.
B. That the Tishomingo County Water District be required to serve and provide water service to the Plaintiff and all land owners in the certificated area.
C. That the Tishomingo County Water District be required to spend the monies appropriately and equally in servicing the certificated area.
D. That the Tishomingo County Water District be restrained from providing service to residents of the State of Alabama, to the exclusion of the Plaintiff and other land owners in the certificated area.
E. That this Commission appoint or assign its own engineers or experts to analyze the situation alleged in this Complaint and determine if monies are being spent properly.
F. If this Commission determines that the Tishomingo County Water District is not rendering reasonably adequate service to all of the land owners in the certificated area, that the Commission revoke the Certificate of Public Convenience and Necessity which has been granted to the District.
G. That the Commission order the District to cease all construction until the Plaintiff and all other landowners who desire water are assured of adequate water service by the District.
H. That the Commission grant a public hearing at a place and time convenient for the Commission in which the Plaintiff may present evidence of the allegations contained in this Complaint.
I. That the Commission grant such other relief that it deems just and necessary.
The Water District filed its answer and affirmative defenses on August 25,1993, in which it denied the charges of impropriety. A public hearing was conducted by Commissioner Robinson of the MPSC on October 26, 1993, at the Tishomingo County Courthouse in Iuka, Mississippi, and several witnesses testified. As stated in his complaint, Shadburn testified that he attended a meeting of the Board of Supervisors in response to a published notice in the local newspaper concerning the proposed formation of a new Water District. He testified that he was promised that he would receive water service at the meeting and therefore voted for the formation of the Water District. Witnesses for the Water District testified that Shadburn was never promised immediate service although he was informed that his property on Indian Creek Road was a part of the Water District’s certificated area. District witnesses basically stated that it was not economically feasible to provide water service to Shadburn and his neighbors at the present time, although the District did offer to provide water service to Shadburn and his neighbors if they would pay the cost of extending a waterline for approximately 3.3 miles from Shadburn’s property to the Water District’s nearest water main.[3] In addition, the District searched for additional grants of money to fund the installation of a waterline to Shadburn. Moreover, District witnesses stated that the grant funds which the District received were obligated for upgrading the existing water system in the manner dictated by the Mississippi Department of Health. The funds received from FmHA were spent in accord with FmHA guidelines to insure a timely payback of the loan from FmHA
¶ 10. After a full hearing, Commissioner Robinson issued a Recommended Order on *1231 February 3,1994, regarding water service to Shadburn and made findings of fact in which he adopted, virtually verbatim, almost all of the allegations of wrongdoing contained in Shadburn’s complaint. However, Commissioner Robinson did not find, as alleged in the complaint, that the Water District arbitrarily and capriciously selected certain landowners or areas for water service to the exclusion of others within the District’s certificated service area. Nevertheless, the Commissioner ruled that the District (1) had misrepresented to Shadburn that he would be served with water; (2) had discriminated against Shadburn and others by not serving them; (3) had failed to properly spend funds equally to all residents of the District’s service area; (4) had devalued Shadbum’s property and the property of other landowners by failing to serve them; and (5) had extended its water lines to residents of Alabama in violation of state law.
¶ 11. On June 9, 1994, the entire Commission fully adopted the recommendations of Commissioner Robinson and further ordered the Water District to “provide reasonably adequate water service” to Shadburn within one hundred and twenty days from the date of the MPSC order “in the most feasible and economical manner possible.... ”
¶ 12. The Water District appealed the MPSC ruling to the Chancery Court of Tish-omingo County. The chancellor reversed the ruling of the Public Service Commission on October 19, 1995. In his opinion, the chancellor stated that he found no substantial evidence to justify the MPSC ruling and that the Water District made “every effort” to secure funding to include the lands of Shad-bum and his neighbors in the initial construction phase of the new water system. However, “funding agencies and requirements of the Mississippi State Board of Health prohibited them from the expenditure of any funds from loans or grants given to it.” In addition, the chancellor disagreed that the water district had violated state law by running water lines into the State of Alabama because water districts that receive grants and loans from federal sources pursuant to federal legislation are allowed to work and contract with other states to carry out the purposes of the applicable federal laws. It is noteworthy that the MPSC did not order the water district to discontinue water service to the Alabama residents although it also found that “state law” had been violated when district water lines were originally extended into Alabama.
¶ 13. Shadburn and the MPSC now appeal the chancellor’s ruling to this Court.
C. THE ISSUES
¶ 14. Both Albert Shadburn and the MPSC cite a single issue for consideration on appeal, which we take verbatim from Shad-burn’s brief:
WHETHER OR NOT THERE WAS SUBSTANTIAL EVIDENCE BEFORE THE PUBLIC SERVICE COMMISSION ON WHICH THE COMMISSION COULD PREDICATE THE ORDER REQUIRING THE TISHOMINGO COUNTY WATER DISTRICT, INC., TO SERVE MR. SHADBURN AND OTHERS.
D. ANALYSIS
¶ 15. An order of the MPSC “shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order of the Commission is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of statutory authority or jurisdiction of the Commission, or violates constitutional rights.” See Miss.Code Ann. 77-3-67 (Rev.1984). In addition, “In all actions and proceedings arising under the provisions of this article [Regulation of Public Utilities] or growing out of the exercise of the authority and powers herein granted to the Commission, the burden of proof shall be on the party seeking to vacate an order of the Commission.” Miss.Code Ann. § 77-3-77 (1972). See also generally White Cypress Lakes Water v. Mississippi Public Serv. Comm’n, 703 So.2d 246 (Miss.1997). On the other hand, where a chancery court overturns or vacates an MPSC order, the burden on appeal to this Court shifts to the Commission to show that its order was not manifestly contrary to the weight of the evidence. See Mississippi Public Serv. Comm’n v. Missis *1232 sippi Power Co., 366 So.2d 656, 661 (Miss.1979). Thus, we have examined the limited record before us with these principles in mind.[4]
¶ 16. The Tishomingo County Water District is a public corporation created by the County Board of Supervisors pursuant to Sections 19-5-151 through 19-5-207 of the Mississippi Code of 1972, as amended, and “is a body politic and corporate with power of perpetual succession.” Miss.Code Ann. § 19-5-165. As a public corporation, its powers are broad, and unlike private water companies operated for profit, it is not subject to water rate regulation of the MPSC. Miss.Code § 77-3-5(c) (Rev.1991). Such a public water system also has the right to extend its water service a distance of one mile outside the service area certificated to it by the MPSC pursuant to Section 19-5-177(k) of the Mississippi Code. Moreover, a public water district created by a county board of supervisors has the right to borrow money from state or federal agencies and enter into cooperative agreements and assume obligations in order to obtain loans or grants. See Miss.Code Ann. § 19-5-203 (1972). Therefore, MPSC regulation of a water district such as the Appellee is limited. To be sure, such a water district may not provide water service for compensation without receiving a certificate of public convenience and necessity from the MPSC to do so in a defined geographic area. In addition, the MPSC has the authority pursuant to Sections 77-3-203 and 77-3-205 of the Mississippi Code, as amended, to hold hearings to determine, as in this case, whether or not the cost of any extension of water service to property owners of the District’s certificated service area is economically feasible and should be borne by the property owner or the utility company. See also Hinds-Rankin Metr. Water and Sewer Ass’n, Inc. v. Mississippi Public Serv. Comm’n, 263 So.2d 546, 553 (Miss.1972). As stated above, the decision of the MPSC on this issue will not be vacated if supported by substantial evidence, is not arbitrary or capricious, or unless the decision is beyond the power of the Commission to decide. Id.
¶ 17. In the case sub judice, the MPSC concluded that the Water District wrongfully discriminated against Shadburn by refusing to extend its water lines to Shadburn’s property at a cost of approximately $70,000 to the District. The MPSC also ruled that grant funds received by the District from state agencies should have been used to pay for this extension. It is noteworthy that the MPSC order does not conclude that the funds borrowed from FmHA should be used by the District to extend its water lines to Shadbum’s property. In fact, the only reference in the MPSC order to the FmHA loan (admittedly obtained to extend water lines to new customers) was the Commission’s statement that the District’s extension of water lines to customers in Alabama was in violation of state law. As stated above, however, the order did not order the District to discontinue its Alabama service or otherwise make reference to the FmHA loan.
¶ 18. The Water District presented evidence through an engineer and the District chairman that their grant funds were obligated to be spent in accord with instructions from the Mississippi Department of Health, which approved the new facilities proposed by the District to remove the Health Department’s moratorium on new water meter hook-ups. These new facilities, according to the Water District, did not initially include facilities to provide water service to Shad-burn and other property owners on Indian Creek Road. No evidence was presented by Shadburn or the MPSC to rebut the testimony presented by the Water District that it was bound to spend its funds for improvements approved by the State Health Department. Thus, this Court has no choice but to conclude that the MPSC’s order directing the *1233 Water District to nevertheless and forthwith use grant funds to extend its waterlines to Shadburn’s property was not supported by substantial evidence and was unreasonable, arbitrary, and capricious. As stated above, no documentation was presented into evidence to rebut the District’s evidence that it was bound by Health Department regulations in what improvements could be made to the water system, and it is simply not enough for the MPSC and Shadburn to state, as alleged by Shadburn in his brief, that MPSC has a right to accept or reject uncontested testimony from a qualified engineer concerning Health Department policies because of the Commission’s special knowledge in the field, without any evidence in the record to support its decision. If such were the ease, no appeal would ever be necessary from a MPSC decision.
¶ 19. Because we do not take lightly a decision to vacate an order of the MPSC, it is appropriate that we discuss each of the findings of fact and conclusions of law of the Commission in this case, as shown in the recommended order of Commissioner Robinson which was ultimately adopted by the entire Commission.
I.DID THE WATER DISTRICT, EITHER DIRECTLY OR INDIRECTLY AND PRIOR TO THE FORMATION OF THE WATER DISTRICT, REPRESENT TO SHADBURN AND OTHER LANDOWNERS ON INDIAN CREEK ROAD THAT THEY WOULD IMMEDIATELY BE SERVED WITH WATER UPON THE FORMATION OF THE WATER DISTRICT?
¶ 20. The answer to this question can only be in the negative since the Water District is a public corporation created pursuant to Sections 19-5-151 through 19-5-207. of the Mississippi Code, as amended, and speaks only through its records and minutes. See American Tel. & Tel. v. Purcell Co., 606 So.2d 93, 97 (Miss.1990). Thus, no statement made by any individual prior to the formation of the Water District is binding in any way upon the Tishomingo County Water District. It is noteworthy that Water District officials contend that Shadburn was never promised that he would immediately receive water service upon creation of the Water District.
II. DID THE WATER DISTRICT BEGIN CONSTRUCTION WITH GRANT MONIES TO SERVE PORTIONS OF ITS SERVICE AREA TO THE EXCLUSION OF SHADBURN?
¶ 21. The answer to this question is “yes.” According to the evidence, the grant funds were used to construct improvements to the old water system already in place so that the moratorium on extension of facilities to new customers could be withdrawn by the Health Department.
III. DID THE WATER DISTRICT BEGIN CONSTRUCTION TO SERVE LANDOWNERS IN ALABAMA IN VIOLATION OF MISSISSIPPI LAW?
¶ 22. Neither the Commission in its order nor Shadburn in his complaint state exactly how the Water District violated state law by serving customers in Alabama. Neither cites any authority in their briefs and neither the MPSC nor Shadburn allege that FmHA funds were misspent. Thus, we are not required to consider this issue since no authority was cited, and this issue was not assigned as error. Cook v. Mardi Gras Casino Corp., 697 So.2d 378, 382 (Miss.1997). Nevertheless, we note that evidence was presented that the new customers in Alabama were located within approximately one mile of the Water District’s certificated service area boundary. No evidence was presented by Shadburn or the MPSC to contest or challenge this evidence. At no point did they contend that the water service to residents of Alabama was outside the one mile corridor encompassing the Water District’s certificated service area. As stated, Section 19-5-177(k) of the Mississippi Code of 1972 allows a water district to serve customers outside of and within one mile of its service area without further order of the MPSC. Thus, to the extent that the customers in Alabama were located within the one-mile corridor, we can only conclude no Mississippi laws were violated when water service was extended to them.
IV. HAS THE WATER DISTRICT DISCRIMINATED AGAINST SHADBURN AND OTHER RESIDENTS BY ITS *1234 FAILURE TO PROVIDE THEM WITH WATER SERVICE?
V. HAS THE WATER DISTRICT FAILED TO PROPERLY SPEND FUNDS EQUALLY TO ALL RESIDENTS OF THE CERTIFICATED AREA?
¶ 23. We rule that the answer to these questions must also be in the negative. Our Mississippi Supreme Court has never required a utility company to provide water service to residents or landowners within the utility service area, regardless of cost. See for example City of Greenwood v. Provine, 143 Miss. 42, 53, 108 So. 284, 286 (1926) which stated:
Certainly it is not the law that a resident of a municipality, living in a remote corner thereof, may compel the city authorities to extend its water mains to his premises regardless of the cost and expense to the city, merely because the citizen resides within the boundaries of the municipality. The extension of the water system from one part of the city where already laid to another part depends upon the reasonableness of such extension, considering the demand for it, the number of water subscribers, and the revenue to be obtained from furnishing the water.
See also Ladner v. Mississippi Public Utilities Co., 158 Miss. 678, 683, 131 So. 78 (1930). This rule has never changed in Mississippi, although the MPSC is authorized by statute to rule on the issue of reasonableness of costs and whether the costs of facility extensions should be borne by the water provider or the property owner. See Miss.Code Ann. § § 77-3-203 and 77-3-205 (1972).
¶ 24. It is apparent from its order in this ease that the MPSC takes the position that the Water District must serve all property owners within its service area regardless of cost to the District (and, by inference, to the property owners already receiving water service). Such a position is contrary to the law in this state and is clearly erroneous for the reasons stated above. It is ironic that the very reason a moratorium on additional water meter hook-ups was imposed by the Health Department was that the old water system was servicing too many customers without sufficient revenue or facilities to provide adequate service, thereby creating a health hazard. Such a situation is precisely why our courts have uniformly ruled that no extension of service is required by the water provider unless the extension is economically feasible.
¶ 25. In the case sub judice, no substantial evidence was presented to show that the Water District’s extension of services to Shadbum’s property, which would have cost $70,000, would have been economically feasible, or that the District had any choice other than to follow the guidelines of the Department of Health in spending the grant money received by the Water District. Instead, from a review of the record, it is apparent that existing customers would likely be forced to pay substantially higher water rates in order to comply with MPSC directive since the District was being directed to make capital improvements costing $70,-000 with inadequate additional revenue to pay for it.
¶ 26. Because we find the appeal of Shad-burn and the MPSC to be without merit, we affirm the decision of the chancery court in this action.
¶ 27. THE JUDGMENT OF THE CHANCERY COURT OF TISHOMINGO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HINKEBEIN, PAYNE and SOUTHWICK, JJ., concur.
KING, J., concurs in result only.

. As shown in Section 77-3-1 of the Mississippi Code of 1972, no person or entity other than a municipality under certain circumstances is authorized to provide water service to the public for compensation without first receiving a certificate of public convenience and necessity to do so from the Mississippi Public Service Commission.

. The record indicates that the Health Department moratorium was issued because Eastport-Snowden's water supply actually came from the City of Iuka, which became incapable of adequately providing water to the several water associations operating near the city, because of the growing population in Tishomingo County. As a result, the Tishomingo County Water District was created to provide water service to the entire county outside the boundaries of its municipalities.

. According to the record, the cost of such an extension would be approximately $70,000.

. The record on appeal to this Court contains no documentation or maps which identify the certificated service area of the Water District and no maps identifying Shadbum’s property. In addition, the record contained no financial data concerning the financial status of the Water District whatsoever. Such information would have been helpful to this Court since we are asked to review the Commission's ruling that a substantial capital improvement by the Water District to run a water line to Shadbum’s property was reasonable and economically feasible, pursuant to Sections 77-3-203 and 77-3-205 of the Mississippi Code of 1972, as amended.